[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 19, 2011
JOHN LEY
CLERK

No. 10-15563
Non-Argument Calendar
_____

D.C. Docket No. 4:10-cr-00052-RH-WCS-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SHANNA MICHELLE LEWIS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(October 19, 2011)

Before EDMONDSON, BARKETT and KRAVITCH, Circuit Judges.

PER CURIAM:

Shanna Michelle Lewis was charged in an indictment with: (i) ten counts of

bank fraud, in violation of 18 U.S.C. § 1344(2); (ii) nine counts of making,

uttering, or possessing a forged security of an organization, in violation of 18 U.S.C. § 513(a); and (iii) one count of aggravated identity theft, in violation of 18 U.S.C. § 1028A. Lewis filed a motion to dismiss the aggravated identity theft count, which the district court denied. Lewis then signed a plea agreement, entering a guilty plea to one count of bank fraud and one count of making, uttering or possessing a forged security of an organization, and entering a conditional plea to the aggravated identity theft count, whereby she reserved the right to appeal the denial of her motion to dismiss. The district court sentenced her to a total of 102 months' incarceration. She appeals her aggravated identity theft conviction and all of her sentences. Upon careful review of the record and the parties' briefs, we affirm.

## I. BACKGROUND

Lewis signed a "Statement of Facts" establishing the following. From 2001 to 2010, she worked as a bookkeeper and office manager for the Leon County Research and Development Authority (LCRDA). During that time, she embezzled $647,542.83 from LCRDA by forging LCRDA checks made payable to herself and depositing them into her personal bank account. She endorsed the checks using the signature stamp of LCRDA chairman Thomas Barron, without Barron's knowledge or consent.

2

After she entered her guilty plea but before she was sentenced, Lewis filed a petition for bankruptcy. In her bankruptcy petition, she failed to disclose that she had previously filed for bankruptcy several years earlier and failed to disclose certain property when listing her assets. At sentencing, the district court calculated a guidelines range of 70-87 months for the bank fraud and forged security counts, refusing to apply a two level reduction for acceptance of responsibility due to the false statements Lewis made in her bankruptcy petition. The district court then sentenced Lewis to 78 months' imprisonment for the bank fraud and forged security counts, and imposed the mandatory consecutive sentence of 24 months' imprisonment for the aggravated identity theft count.

## II. DISCUSSION

### A. Aggravated Identity Theft

The aggravated identity theft statute prohibits the knowing transfer, possession, or use, without lawful authority, of "a means of identification of another person," in relation to a violation of 18 U.S.C. § 1344, the bank fraud statute. 18 U.S.C. § 1028A(a)(1), (c)(5). "Means of identification" is defined as:

> any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual, including any—

(A) name, social security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number;

(B) unique biometric data, such as fingerprint, voice print, retina or iris image, or other unique physical representation;

(C) unique electronic identification number, address, or routing code; or

(D) telecommunication identifying information or access device (as defined in [18 U.S.C. § 1029(e)]).

18 U.S.C. § 1028(d)(7). "Access device," as used in § 1028, is defined as:

any card, plate, code, account number, electronic serial number, mobile identification number, personal identification number, or other telecommunications service, equipment, or instrument identifier, or other means of account access that can be used, alone or in conjunction with another access device, to obtain money, goods, services, or any other thing of value, or that can be used to initiate a transfer of funds (other than a transfer originated solely by paper instrument).

18 U.S.C. § 1029(e)(1).

Lewis argues that the district court erred when it denied her motion to dismiss the aggravated identity theft charge on the ground that the conduct with which she was charged and to which she admitted—embezzling money from her employer by creating and passing forged checks—does not constitute aggravated identity theft. She contends that, because the statutory definition of "access

4

device" excludes "transfer[s] originated solely by paper instrument," the conduct of falsifying a signature on a stolen check and cashing the check does not constitute the knowing transfer, possession, or use, without lawful authority, of "a means of identification of another person."[1]

The flaw in Lewis's argument is that an "access device" is only one of several items that Congress listed, in the disjunctive, as a "means of identification." 18 U.S.C. § 1028(d)(7). Thus, simply failing to satisfy the definition of "access device" does not end the analysis with respect to whether a signature on a stolen check is a "means of identification." Any name that may be used to identify a specific individual, including the individual's "name," will satisfy the definition of "means of identification," even if it does not satisfy the definition of "access device." Id. As the signature of an individual's name specifically identifies that individual, we conclude that forging another's signature constitutes the use of a "means of identification." Accord United States v. Blixt, 548 F.3d 882, 888 (9th Cir. 2008) ("[F]orging another's signature constitutes the use of that person's name for the purpose of applying the Aggravated Identity

---

[1] We review de novo the legal question of whether an indictment sufficiently alleges a statutorily proscribed offense. United States v. Woodruff, 296 F.3d 1041, 1045 (11th Cir. 2002). We review de novo questions of statutory interpretation. United States v. Segarra, 582 F.3d 1269, 1271 (11th Cir. 2009).

5

Theft statute."). Here, the indictment explicitly charged Lewis with using "the name and signature of T.B."—and not an "access device"—as a "means of identification." Accordingly, the district court properly denied Lewis's motion to dismiss the aggravated identity theft count.

## B. Acceptance of Responsibility

Section 3E1.1 of the Sentencing Guidelines provides for a two-level reduction in the offense level of a defendant who clearly demonstrates acceptance of responsibility for her offense, with an additional one-level reduction possible if the government so moves. U.S.S.G. § 3E1.1. A district court's assessment of a defendant's acceptance of responsibility under U.S.S.G. § 3E1.1 is entitled to great deference, and we review it for clear error. United States v. Moriarty, 429 F.3d 1012, 1022 (11th Cir. 2005). Thus, a district court's determination that a defendant is not entitled to a § 3E1.1 adjustment will not be set aside unless the facts in the record clearly establish that the defendant has accepted responsibility. Id. at 1022-23.

"The defendant bears the burden of clearly demonstrating acceptance of responsibility and must present more than just a guilty plea." United States v. Sawyer, 180 F.3d 1319, 1323 (11th Cir. 1999);; see U.S.S.G. § 3E1.1 cmt. n.3. "Although a guilty plea may be significant evidence of acceptance of

6

responsibility, it may be outweighed by other conduct inconsistent with an acceptance of responsibility." Moriarty, 429 F.3d at 1023; see U.S.S.G. § 3E1.1 cmt. n.3. A district court may consider the defendant's subsequent conduct in deciding whether to apply a reduction pursuant to § 3E1.1. See United States v. Pace, 17 F.3d 341, 343 (11th Cir. 1994).

As it is undisputed that, after pleading guilty, Lewis signed a false petition and submitted false schedules under the penalty of perjury in the bankruptcy proceedings, the district court was entitled to conclude that Lewis's subsequent conduct negated or outweighed her attempts to accept responsibility by voluntarily turning over assets and pleading guilty. Accordingly, we cannot say that the court clearly erred in concluding that Lewis did not meet her burden of demonstrating acceptance of responsibility.

**AFFIRMED.**